IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| CLARENCE R. SANKS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CASE NO. 4:09-CV-87-CDL-GMF |
| | : |
| TIMOTHY FRANKLIN, *et al.,* | : |
| | : |
| Defendants. | : |

**ORDER AND**
**REPORT AND RECOMMENDATION**

Presently pending before the court is a partial motion to dismiss filed by Defendants Timothy Franklin and Paul Morris (Doc. 29); a motion to dismiss filed by Defendant Dr. Sher E. Schwartz (Doc. 32); a second motion to appoint counsel filed by Plaintiff (Doc. 35); and a motion for discovery filed by Plaintiff (Doc. 18). Plaintiff was notified of his right to respond to the motions to dismiss (Doc. 34) and timely responded to Defendants' motions on October 19, 2009 (Doc. 36).

**LEGAL STANDARD FOR A MOTION TO DISMISS**

The United States Supreme Court altered the motion to dismiss standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which overturned the fifty year old test of "no set of facts" established in *Conley v. Gibson*, 355 U.S. 41 (1957). The Court of Appeals for the Eleventh Circuit addressed the new standard in *Financial Security Assurance, Inc. v. Stephens, Inc.*, stating:

> In order for the plaintiff to satisfy his "obligation to provide the

> grounds of his entitlement to relief," he must allege more than "labels and conclusions"; his complaint must include "[f]actual allegations [adequate] to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (May 21, 2007) (citations and quotations omitted). Stated differently, the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief," 127 S. Ct. at 1966-67. Moreover, "while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (alterations in original). In ruling on a motion to dismiss for failure to state a claim, the analysis "is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam). The court must "constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). Nevertheless, if a complaint does not include sufficient factual allegations "'to raise a right to relief above the speculative level'" and "'to raise a reasonable expectation that discovery will reveal evidence of'" the plaintiff's claim or claims, then the complaint must be dismissed. *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 556). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(2009).

## DISCUSSION

### I.     Factual Background

Plaintiff's claims stem primarily from incidents occurring in his Muscogee County Jail cell on July 3rd and 4th, 2009.  Plaintiff, a pretrial detainee, contends that on July 3rd, second-shift officers had opened the flap of Plaintiff's cell door to increase air circulation because the air conditioner was broken and Plaintiff was having difficulty breathing due to a broken nose.  Plaintiff alleges that the flap was accidentally shut, and he began "gasping for air and starting to fa[i]nt."  (Doc. 1 at 4).  Various inmates attempted to alert prison officials to Plaintiff's condition for an hour and twenty minutes, but to no avail.  (*Id.*). During that morning's medical rounds, Plaintiff alleges that he tried to advise jail officer Defendant Timothy Franklin and the nurse who was dispensing medication of his breathing condition and that he was medically required to keep the flap open.  Franklin allegedly told Plaintiff that if he continued talking, he would close the flap.  (*Id.*).

During the following morning's medical rounds, Franklin and the nurse observed Plaintiff "gasping for air as sweat was running off of [his] face," and Plaintiff "begged [Franklin] to leave [his] flap door opened while on [his] knee's with [his] head through the flap door holding [his] medical request."  (Doc. 1 at 4).  Plaintiff alleges that Franklin "shut the flap with [Plaintiff's] face in it," tearing the medical request and striking Plaintiff in his previously-fractured nose, "causing great pain to [his] nose." (*Id.*)  Plaintiff then alleges that he "begged" Franklin for medical attention and told Franklin he was "about to die."  (*Id.* at

3

4, 6). Franklin reportedly informed Plaintiff that if Plaintiff died, his "death wouldn't be on his hands." (*Id.* at 6). Plaintiff contends that Franklin's actions "subjected [Plaintiff] for over 2 days to cruel & unusual punishment being inflicted by violating [Plaintiff's] 8th Amendment rights." (*Id.*). Plaintiff contends that he still requires pain medication because his "head & nose constantly hurts & ache." (*Id.* at 4).

Plaintiff further alleges that "[d]ealing with these issues [he] also [e]ncountered tremendous grief through the medical department." (*Id.* at 7). He contends that Defendant Dr. Sher E. Schwartz, a psychologist working for New Horizons, "degra[d]ed" him upon his admission to the jail and put him on a "mental health caseload" "for no reason at all." (Doc. 1 at 7, 8). Plaintiff contends that Dr. Schwartz has played "mind games" with him and "kept [him] in a room thats in size of 8 feet length, by six feet [wide], and 8 feet in depth" with a roommate for up to twenty-three hours per day. (*Id.*). Plaintiff repeatedly asserts that he does not have any mental illness that would require his placement in a mental health dormitory. (*See, e.g., id.*). Plaintiff contends that Dr. Schwartz's actions violated his Eighth Amendment rights. (*Id.* at 7). Plaintiff also contends that these cells are unsanitary and lack emergency push-buttons, although it is unclear from the Complaint against whom Plaintiff makes these allegations. (*Id.* at 7-8).

In addition to his allegations against Dr. Schwartz, Plaintiff contends that Paul Morris, the Medical Director of New Horizons, violated his constitutional rights. Plaintiff alleges that he was prescribed several medications which caused him stomach pain. Plaintiff was

4

therefore medically authorized to be given a "snack" during nightly medication issue. Plaintiff alleges that the piece of bread he was issued as a snack was too insubstantial to relieve his stomach pain and that he required a sandwich instead. (Doc. 1 at 9). Plaintiff alleges that Morris's failure to issue him a sandwich and respond to his related grievances demonstrates "a lack of care to [Plaintiff's] serious medical needs," thereby violating Plaintiff's Eighth Amendment rights. (*Id.*).

Plaintiff sues each Defendant in his or her individual capacity, seeking compensatory damages in the amount of $200,000.00.[1] (*See* Doc. 1 at 5, 6). In addition, Plaintiff seeks

> to change the policy of the way inmates rights are infringed within detention centers & jails throughout the state of Georgia. Plus to set stric[t]er guidelines toward detention center's psychologist/psychiatri[s]ts in their treatment of classifying someone as mental health. Post up a "due-process" memorandum thru out the jail system in which doctors and officers should uphold.

(*Id.* at 5). For the following reasons, Defendants' motions are due to be granted.

## II.     Motion to Dismiss Filed by Defendants Franklin and Morris

### A.     *Claims against Defendant Franklin*

Plaintiff contends that Franklin ignored his serious medical needs by refusing to keep the flap to Plaintiff's cell door open, causing Plaintiff to suffer difficulty breathing. In addition, Plaintiff seeks to assert an excessive force claim against Franklin for injuring Plaintiff by striking him in the face with the door flap. Franklin concedes that Plaintiff's

---

[1] At one point in his Response to Defendants' Motions to Dismiss, Plaintiff appears to contend that he is also suing Defendants in their official capacities. (*See* Doc. 36 at 17 ("Plaintiff is suing all individuals in their official and individual capacities."); *but see id.* at 3 ("These individuals are sued within their individual capacity."; *id.* at 9 (same)). Plaintiff has not sought to amend his Complaint to assert these additional official capacity claims. As such, the court will not consider them.

claim against Franklin regarding keeping Plaintiff's flap open requires extrinsic evidence, and it is therefore not ripe for decision on a motion to dismiss. (Doc. 29-2 at 1 n.2). The court accordingly turns to Plaintiff's claim that Franklin struck him in the face with the door flap.

It is beyond reasonable dispute that prisoners have a constitutional right to be free from excessive force and that excessive force claims can therefore form the basis for a lawsuit under 42 U.S.C. § 1983. *See, e.g., Fennell v. Gilstrap*, 559 F.3d 1212, 1215 (11th Cir. 2009) (per curiam).[2] The Prison Litigation Reform Act ("PLRA"), however, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, the United States Supreme Court has held that an inmate must fully and properly exhaust all available administrative remedies before he can file a Section 1983 lawsuit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Franklin moves to dismiss Plaintiff's claims for failure to fully exhaust the prison's grievance procedure.

In *Bryant v. Rich*, the Eleventh Circuit addressed the proper form of a pretrial motion challenging a plaintiff's failure to exhaust his administrative remedies, holding:

---

[2] For pretrial detainees such as Plaintiff, the source of this right is the Fourteenth Amendment rather than the Eighth Amendment, as Plaintiff contends. *Fennell*, 559 F.3d at 1216 n.4. However, because "[a] claim of excessive force under the Fourteenth Amendment is analyzed as if it were an excessive-force claim under the Eighth Amendment," the court "look[s] to decisional law of excessive-force claims under both the Fourteenth and Eighth Amendments." *Id.* at 1216 n.5 (internal citations omitted).

6

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). Thus, a judge may resolve factual questions when deciding a motion to dismiss for failure to exhaust nonjudicial remedies. *Id.* at 1376. Shortly after its decision in *Bryant*, the court developed a two-step process to assist courts in deciding a motion to dismiss for failure to exhaust administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Specifically, the court held:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082-83 (internal citations omitted); *see also Williams v. Marshall*, 319 F. App'x 764, 767 (11th Cir. 2008) (per curiam).

Applying these principles to Plaintiff's excessive force claim against Defendant Franklin, it is clear that Plaintiff has failed to exhaust it. Plaintiff alleges that he filed a

grievance regarding Franklin's actions on July 6, 2009, and he attaches the grievance to his Complaint as Exhibit B. (Doc. 1 at 6; Ex. B to Doc. 1). Defendants Franklin and Morris attach an identical document to their Motion to Dismiss. (Ex. A to Doc. 29 at 20-22). In his response to Defendants' motion, Plaintiff repeats his assertion that Exhibit B to his Complaint demonstrates that he fully exhausted the administrative grievance procedure. (Doc. 36 at 7-8). A review of these documents, however, reveals that Plaintiff never mentioned that he was physically injured by the flap striking his face. (*See* Ex. B to Doc. 1; Ex. A to Doc. 29 at 20-22).[3]

The primary purposes of the exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Each of these purposes is thwarted by Plaintiff's failure to include his excessive force claim in the detailed grievances he filed regarding Defendant Franklin. The factual allegations made by Plaintiff and Defendants in this case therefore do not conflict, and even assuming Plaintiff's

---

[3]On October 1, 2009, Plaintiff did file and attempt to appeal a grievance concerning his allegations that Defendant Franklin injured him with the flap door. (Ex. V to Doc. 36). Notably, this grievance was filed *after* Plaintiff filed the instant lawsuit and *after* Defendants filed their motion to dismiss on the basis that Plaintiff had failed to exhaust his administrative remedies with respect to the excessive force claim against Defendant Franklin. Section II-F of the grievance procedure requires an inmate to "file a written grievance within five days of discovery or when he/she reasonably should have discovered the incident." (Ex. B to Doc. 29 at 30). Plaintiff's October 1, 2009 grievance clearly occurred more than five days after Plaintiff knew or reasonably should have known he was injured; it is therefore untimely and Plaintiff's claim is subject to dismissal for failure to exhaust. *See, e.g., Johnson v. Meadows*, 418 F.3d 1152, 1153 (11th Cir. 2005) (concluding that "an untimely administrative grievance does not satisfy the exhaustion requirement of the PLRA").

allegations regarding exhaustion are true, Defendant Franklin is entitled to dismissal of Plaintiff's excessive force claim. Because this issue can be resolved at the first level of *Burnside* review, there is no need to proceed to the second step. Plaintiff's failure to exhaust the administrative remedies available to him precludes the court from reviewing his excessive force claim against Defendant Franklin.

### B. *Miscellaneous Prison Condition Claims*

Plaintiff also appears to assert a number of claims regarding prison conditions. For example, Plaintiff complains that his cell is unreasonably small, that he is forced to share a one-man cell with another inmate and must accordingly sleep on a mattress on the floor, and that the cells are unsanitary. (Doc. 1 at 7-8). In addition, Plaintiff contends that because the cells do not contain emergency "federal guideline push buttons," he is required to "beat on the doors in hopes of a[] floor officer hearing the vibration thru a series of doors before someone would come to see what's going on," and that this constitutes a violation of his equal protection rights. (*Id.* at 7).

Defendants Morris and Franklin[4] note that these claims "do not appear to be made against any of the named defendants" and "should be dismissed as none of them are alleged in any grievance filed by the Plaintiff." (Doc. 29 at 7 n.2). After a careful review of the documents provided by Plaintiff and Defendants, the Court agrees. Nowhere in Plaintiff's

---

[4] Defendant Schwartz does not move to dismiss these claims on failure to exhaust grounds. However, any "conditions of confinement" claims Plaintiff asserts against Defendant Schwartz are still subject to dismissal as discussed in section III below.

9

numerous grievances does he complain about the size of his cell, the cleanliness of his cell, the fact that he is required to share a cell with another inmate, or his concern with the lack of emergency push buttons. Accordingly, these claims are likewise subject to dismissal for Plaintiff's failure to exhaust the prison's grievance procedure.

### C. Claims against Defendant Morris

Plaintiff's Complaint mentions Defendant Morris only once, in the context of the administration of Plaintiff's medication. Plaintiff appears to allege that he was medically authorized to have a "snack" during nightly medication call to alleviate the stomach pain caused by the strength of his medications. Plaintiff alleges that his snack, which consisted of a piece of bread, was not sufficiently substantial, and he requested a sandwich instead. (Doc. 1 at 9). Plaintiff alleges that Morris's refusal to give Plaintiff a sandwich exhibited deliberate indifference to his serious medical needs and that he suffered stomach pain as a result.[5] (*Id.*).

Defendant Morris also contends that Plaintiff's failure to identify Morris in his grievances as the individual responsible for failing to adjust Plaintiff's medically authorized snack requires dismissal of this claim for improper exhaustion. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to

---

[5]Additionally, in his response to Defendants' motions to dismiss, Plaintiff contends that Morris is liable for "allowing a[] jail-deputy or staff sergeant to overstep a[] doctor's medical order." (Doc. 36 at 24). This allegation was not made in Plaintiff's Complaint, and as such, the court will not consider it. Moreover, the court cannot understand what "medical order" was "overstep[ped]" in this case—the medical order at issue appears to be that authorizing a snack for Plaintiff, and Plaintiff admits that he received some form of snack with his medications.

system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. While it appears true that the jail's grievance policy requires Plaintiff to identify the individuals involved in any complained-of incident, (*see* Ex. B to Doc. 29 at ¶ H), the Eleventh Circuit requires only that a prisoner "provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, *as the prisoner reasonably can provide*." *Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000) (emphasis added). Thus, a prisoner may not necessarily be required to provide the name of a high-level prison official if the prisoner "did not know and could not readily ascertain the identity of the individuals responsible for the alleged injury or deprivation" in order to exhaust his administrative remedies with respect to an otherwise well-described claim. *Id.* at 1208. It is unclear at this stage in the litigation whether Plaintiff knew or reasonably should have known who was responsible for failing to adjust Plaintiff's snack.[6]

Even pretermitting the question of whether Plaintiff should have identified Morris in his grievance, however, Plaintiff's claim against Morris is still subject to dismissal because Plaintiff has failed to demonstrate that the provision of a piece of bread rather than a sandwich violates Plaintiff's constitutional rights. To prevail on his claim, Plaintiff must allege both an objectively serious medical need and that Morris acted with deliberate

---

[6]Indeed, it is unclear from the parties' submissions to the court whether Morris had the authority to alter Plaintiff's medical order to provide Plaintiff with a "sandwich" instead of a "snack" as Plaintiff requested. Even assuming Morris did possess such authority, Plaintiff has not stated a claim for deliberate indifference to his medical needs, as discussed below.

indifference to that need. *Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007). "A medical need that is serious enough to satisfy the objective component is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). Even viewing the facts in the light most favorable to Plaintiff, the court cannot conclude that Plaintiff's stomach ache meets this standard. *See, e.g., Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) (per curiam) (plaintiff's low back pain was not the type of condition that would amount to a serious medical need); *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (per curiam) (finding that plaintiff's eczema, back pain, various stomach disorders, allergies, and asthma did not constitute serious medical needs); *Scott v. Batson*, No. 88-1612, 1989 WL 37292, at *1 (9th Cir. Apr. 10, 1989) (holding that "neither a 'head cold' nor a 'sore throat'—the symptoms appellant alleges—is a 'serious medical need' for the purposes of the Eighth Amendment").

Further, even if the court were to assume that Plaintiff's stomach ache could constitute an objectively serious medical need, Plaintiff has not established that Morris acted with deliberate indifference to this need. To establish subjective deliberate indifference, Plaintiff must establish (1) that Morris knew of a risk of serious harm; (2) that Morris disregarded that risk; and (3) that Morris's conduct amounted to more than gross negligence. *Andujar*, 486 F.3d at 1203-04. Healthcare professionals considered Plaintiff's medical needs when they authorized him to have a snack to accompany his medication; however, the question of what quantity or type of food was medically necessary is a matter requiring expert medical

12

judgment. Such claims are not typically cognizable under 42 U.S.C. § 1983. *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981) (per curiam) ("Appellant's difference of opinion over matters of expert medical judgment or a prescribed course of medical treatment fails to state a federal constitutional question."); *see also Moreland v. Wharton*, 899 F.2d 1168, 1170 (11th Cir. 1990) (per curiam) (noting that "[f]ew lapses of medical care rise to the level of a constitutional violation" but finding that plaintiff had stated a constitutional claim by alleging (1) a "significant and uncomfortable health condition," (2) "repeated efforts to obtain treatment," (3) "a total lack of treatment for the problem," and (4) "that his condition [could] be (and in the past ha[d] been) successfully treated"). Accordingly, even when the facts alleged by Plaintiff are taken as true, Plaintiff has failed to establish the existence of a constitutional violation with respect to his snack. Plaintiff's claims against Morris are therefore subject to dismissal.

### III.    Motion to Dismiss Filed by Defendant Schwartz

Plaintiff's complaints against Defendant Schwartz appear to be grounded in her decision to place Plaintiff on "a mental health caseload," her assignment of Plaintiff to the mental health dormitory, and her failure to reassign Plaintiff to the general population area of the jail. (*See, e.g.,* Doc. 1 at 7-8, Doc. 36 at 13). Plaintiff contends that his assignment to a mental health caseload was "for no reason at all" as he is "not a threat to [himself] or others." (Doc. 1 at 8). Plaintiff also complains that Dr. Schwartz ignored his repeated requests to meet with her or have her release him from the "tortured setting" he has endured. (*Id.*). Dr. Schwartz brings her motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted. In addition, Dr. Schwartz seeks dismissal of Plaintiff's claims for damages pursuant to 42 U.S.C. § 1997e(e), contending that Plaintiff has failed to allege a physical injury.

*A.    Monetary Damages Claims*

42 U.S.C. § 1997e(e) states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." While Plaintiff arguably alleges that Dr. Schwartz's actions caused him mental or emotional injury, Plaintiff has failed to allege any sort of physical injury related to his claims against Dr. Schwartz. Thus, to the extent Plaintiff seeks damages against Dr. Schwartz, these claims must be dismissed.

*B.    Remaining Claims*

In addition to monetary relief, Plaintiff also seeks

> to change the policy of the way inmates rights are infringed within detention centers & jails throughout the state of Georgia plus to set stric[t]er guidelines toward detention center's psychologist/psychiatri[s]ts in their treatment of classifying someone as mental health. Post up a "due-process" memorandum thru out the jail system in which doctors and officers should uphold.

(Doc. 1 at 5). Although claims for non-monetary relief are not subject to dismissal pursuant to § 1997e(e), Plaintiff does not seek this relief against any of the individual named Defendants, each of whom are sued in his or her individual capacity only. Thus, any injunctive relief sought by Plaintiff is not appropriate in this case. *Cf., e.g., Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539-40 (11th Cir. 1991) ("[N]one of the plaintiffs'

counts ask for an injunction against an individual Board member. Accordingly, the plaintiffs do not ask for injunctive relief against the Board members in their individual capacities.") (footnote omitted)).

Even though neither monetary damages nor non-monetary relief is available as to Defendant Schwartz, the Eleventh Circuit has noted that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." *Williams v. Brown*, No. 08-16230, 2009 WL 2883496, at *6 (11th Cir. Sep. 10, 2009) (per curiam) (unpublished opinion) (alteration in original) (internal quotation marks omitted). Although Plaintiff did not specifically request nominal damages, Federal Rule of Civil Procedure 54(e) provides that every final judgment, with the exception of a default judgment, "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Moreover, Plaintiff did seek both compensatory damages and injunctive relief. *See Williams,* 2009 WL 2883496 at *6 (remanding to district court for consideration of whether nominal damages should be available to pro se plaintiff who sought both compensatory and injunctive relief, particularly in light of Rule 54(e)); *Chatham v. Adcock*, No. 07-14995, 2009 WL 1788719, at *2 (11th Cir. June 24, 2009) (per curiam) (unpublished opinion). The court will therefore assume, without deciding, that nominal damages are available in this case and will examine the merits of Plaintiff's claim.

It is somewhat unclear what type of claim Plaintiff is alleging against Dr. Schwartz. To the extent Plaintiff challenges the conditions of his pretrial detention, his claim must fail.

15

"In contrast to a sentenced prisoner, whose conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment, 'the proper inquiry [for a pretrial detainee] is whether [confinement] conditions amount to punishment of the [unadjudicated] detainee' under the Due Process Clause of the Fourteenth Amendment." *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998) (alterations in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979)). "Due process requires that a pretrial detainee not be punished prior to a lawful conviction." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004). However, the government "may detain [Plaintiff] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. The court must also keep in mind that

> [n]ot every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense. . . . And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

*Id.* at 537. Instead, "[t]he determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose." *Magluta*, 375 F.3d at 1273. "An intent to punish on the part of detention facility officials is sufficient to show unconstitutional pretrial punishment." *Id.* Further, when a restriction on a pretrial detainee "is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court

may infer that the purpose of the government action is punishment." *Wilson*, 163 F.3d at 1292 (internal quotation marks omitted); *see also Magluta*, 375 F.3d at 1273.

Plaintiff complains that when Dr. Schwartz assigned him to a "mental health caseload," he was put into a cell with "a lock-down period of 23 hours day/nightly, with 1 hour out each day" even though he claims he did not have a mental condition warranting such treatment. (Doc. 1 at 7). Plaintiff further alleges that Dr. Schwartz did not respond to Plaintiff's repeated requests to be placed in the general population. (*See id.*). Even construing Plaintiff's Complaint liberally and assuming the veracity of these allegations, Plaintiff has not alleged that Dr. Schwartz assigned him to the mental health dorm with any sort of punitive intent. In fact, Plaintiff repeatedly asserts that he was "not being punished for disruptive behavior nor any other wrongdoing." (Doc. 1 at 8; *see also id.* at 7 ("I'm not on any discipline, isolation, nor administrative segregation . . . .")). Thus, to the extent Plaintiff attempts to hold Dr. Schwartz liable for the conditions of his confinement, this claim fails. *Cf., e.g., Magluta*, 375 F.3d at 1274-75 (noting that plaintiff's complaint contained numerous clear allegations that harsh pretrial conditions were imposed solely for punitive purposes).

To the extent the Plaintiff's Complaint asserts that Dr. Schwartz misdiagnosed Plaintiff by including him on the "mental health caseload, " it fails to state a constitutional claim. "A mere failure to exercise ordinary care in conducting an examination or inadvertence with regard to the provision of medical care may constitute medical malpractice, but is insufficient to support a section 1983 claim of a constitutional violation."

17

*Moreland*, 899 F.2d at 1170.  Accordingly, this claim likewise fails.

## IV.     Other Pending Motions

Plaintiff also has pending before the court Plaintiff's Motion for Discovery, in which Plaintiff seeks a court order requiring Defendants to comply with discovery.  Plaintiff's motion for discovery is now moot, as Plaintiff's claim against Defendant Franklin for deliberate indifference to Plaintiff's serious medical needs will proceed and the parties will engage in discovery as to that claim.  Plaintiff's motion is therefore denied as moot.

In addition, Plaintiff filed a second Motion to Appoint Counsel.  Plaintiff contends that Defendants have acted in bad faith thus far in this litigation and that appointment of counsel will help rectify Defendants' actions and further secure Plaintiff's rights.  In addition, Plaintiff contends that he will be unable to fully investigate his claims against Defendants since he remains imprisoned.  After having considered Plaintiff's motion, the court still cannot say that exceptional circumstances justify the appointment of counsel in this case.  *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982); *see also Brunskill v. Boyd*, 141 F. App'x 771, 777 (11th Cir. 2005) (per curiam) ("A plaintiff in a civil case does not have a constitutional right to counsel, and the court should only appoint counsel in exceptional circumstances.").  In reaching this decision, the court again considers, among other factors, the merits of the Plaintiff's claim and the complexity of the issues presented.  *See Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) (en banc).  Plaintiff's motion is therefore denied.

WHEREFORE, IT IS HEREBY RECOMMENDED that Defendants' Motions to Dismiss be granted in their entirety.  Thus, the only remaining claim in this action is

Plaintiff's claim against Defendant Franklin for deliberate indifference to Plaintiff's serious medical need to keep his cell door flap opened. In addition, the court DENIES Plaintiff's Motion for Discovery as moot and DENIES Plaintiff's Second Motion to Appoint Counsel.

Under 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the UNITED STATES DISTRICT JUDGE within TEN (10) DAYS after being served with a copy hereof.

**SO RECOMMENDED**, this 17th day of November, 2009.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mkw